IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CARL L. LOWERY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of Social Security,**<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:09-cv-503-PMW<br><br><br>Magistrate Judge Paul M. Warner |

Before the court is Carl L. Lowery's ("Plaintiff") appeal of Michael J. Astrue's ("Commissioner") final decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id*. §§ 1381-1383f. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is unnecessary in this case.

## BACKGROUND

In February 2006, Plaintiff applied for DIB and SSI, alleging disability beginning on March 15, 2005, due to certain physical impairments.[1] Plaintiff later amended his alleged onset date to November 1, 2005.[2] Plaintiff's application was denied initially in September 2006, and

---

[1] *See* docket no. 8, Administrative Record ("Tr. ___") 13, 49-53.

[2] *See* Tr. 255.

upon reconsideration in January 2007.³ In March 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),⁴ and that hearing was held on March 7, 2008.⁵ On April 30, 2008, the ALJ issued a written decision denying Plaintiff's claims.⁶ In April 2009, the Appeals Council denied Plaintiff's request for review,⁷ making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On June 3, 2009, Plaintiff filed his complaint in this case, which was assigned to Chief District Judge Tena Campbell.⁸ On August 14, 2009, both parties consented to have a Magistrate Judge conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.⁹ Consequently, the case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.¹⁰

---

³ *See* Tr. 33-34.

⁴ *See* Tr. 35.

⁵ *See* Tr. 215-256.

⁶ *See* Tr. 10-26.

⁷ *See* Tr. 4-6.

⁸ *See* docket no. 3.

⁹ *See* docket no. 11.

¹⁰ *See id*.

On August 7, 2009, the Commissioner filed his answer to Plaintiff's complaint.[11]  On August 10, 2009, the court received the Administrative Record.[12]  Plaintiff filed his opening brief on October 2, 2009.[13]  The Commissioner filed his responsive brief on November 2, 2009.[14]  Plaintiff filed his reply brief on November 17, 2009.[15]

## **STANDARD OF REVIEW**

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been

---

[11] *See* docket no. 6.

[12] *See* docket no. 8.

[13] *See* docket no. 14.

[14] *See* docket no. 15.

[15] *See* docket no. 16.

3

followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past

4

relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id*. At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id*.; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## **ANALYSIS**

In support of his claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred by failing to (1) properly evaluate whether Plaintiff's impairments met or equaled section 1.02 ("listing 1.02") of Appendix 1 of the relevant regulations (individually, a "listing" and collectively, the "listings"), *see* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.02 (major dysfunction of a joint); (2) properly evaluate the opinions of one of Plaintiff's treating sources; and (3) address Plaintiff's hypertension in the assessment of Plaintiff's RFC. The court will address each of those arguments in turn.

## I. Listing 1.02

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by failing to properly evaluate whether Plaintiff's impairments met or equaled listing 1.02. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.02; *see also* 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. More specifically, Plaintiff argues that the ALJ failed to address evidence that showed Plaintiff had the inability to ambulate effectively. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.02.

At step three, a claimant has the "burden to present evidence establishing [his] impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). In order to satisfy this burden, a claimant must establish that his impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In order to meet or equal listing 1.02, Plaintiff was required to establish that his impairments involved "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.02A. Listing 1.00B2b provides that "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.00B2b. Listing 1.00B2b also provides that

> examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*.

    Plaintiff argues that the ALJ ignored evidence showing that Plaintiff was unable to ambulate effectively. Plaintiff focuses exclusively on two pages of clinical notes from Dr. Jeffrey R. Smith[16] and argues that the ALJ ignored this evidence when considering whether Plaintiff could ambulate effectively. Plaintiff asserts that the ALJ failed to consider Dr. Smith's indications that Plaintiff had persistent right knee discomfort, was using a handrail to negotiate stairs, and was using a cane to walk based on doctor's directions.[17] Plaintiff also argues that while the ALJ recognized Dr. Smith's indication that Plaintiff's MHSS knee score had improved 100%, the ALJ failed to note Dr. Smith's indication that the score was "overall . . . only fair."[18] Plaintiff asserts that the ALJ erred by failing to address this evidence because it supports the conclusion that Plaintiff had the inability to ambulate effectively, as required by listing 1.02.

---

[16] *See* Tr. 189-90.

[17] *See id*.

[18] *Id*. at 189.

The court disagrees. Plaintiff has failed to demonstrate how the above-referenced evidence supports the conclusion that Plaintiff had the inability to ambulate effectively. To the contrary, several pieces of evidence that Plaintiff relies upon appear to support the ALJ's determination that Plaintiff failed to establish that he in fact had an inability to ambulate effectively. Dr. Smith's indications that Plaintiff was using a handrail to negotiate stairs and was using a single cane are specifically contemplated under listing 1.00B2b as examples of activities that do not meet the requirement of ineffective ambulation under listing 1.02. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 1.00B2b (citing the use of "*two* canes" and "the *inability* to climb a few steps at a reasonable pace *with* the use of a single hand rail" as examples of ineffective ambulation (emphasis added)). As for Dr. Smith's indications that Plaintiff had persistent right knee discomfort and that his November 2007 MHSS knee score was "overall . . . only fair,"[19] the court does not believe they provide any direct or significantly probative evidence about whether Plaintiff could or could not effectively ambulate. Accordingly, the court cannot conclude that the ALJ erred by failing to discuss them with respect to listing 1.02. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," but also stating that "an ALJ is not required to discuss every piece of evidence").

For these reasons, the court concludes that the ALJ did not err in his evaluation of whether Plaintiff's impairments met or equaled listing 1.02.

---

[19] *Id*.

## II. Treating Source Opinions

Plaintiff argues that the ALJ failed to properly evaluate the opinions of one of Plaintiff's treating sources, Dr. Lynn Bateman.

> In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for controlling weight. To make this determination, the ALJ . . . must first consider whether the opinion is well[ ]supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.
>
> Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §§ 404.1527 and 416.927]. Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted) (sixth alteration in original); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). In addition, a treating source's opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e).

In this case, because the ALJ concluded that the opinions of Dr. Bateman were entitled to little weight, it is implicit that the ALJ also viewed those opinions as not being entitled to controlling weight. Accordingly, the court turns to the deference and weight the ALJ gave to Dr. Bateman's opinions. *See Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

In reaching his determination about Dr. Bateman's opinions, the ALJ properly relied upon the fact that Dr. Bateman's opinions were inconsistent with other examinations and treatment notes in the record. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). The ALJ also properly relied upon the fact that Dr. Bateman's opinions about Plaintiff's highly restrictive work limitations were unsupported by other medical evidence in the record, objective findings, or Plaintiff's activities of daily living. *See id*. § 404.1527(d)(3)-(4), 416.927(d)(3)-(4). Finally, the ALJ correctly noted that several of Dr. Bateman's medical opinions were on issues reserved to

the Commissioner, such as the determinations about Plaintiff's work limitations and whether he was disabled. *See Castellano*, 26 F.3d at 1029; *see also* 20 C.F.R. § 404.1527(e)(1)-(2), 416.927(e)(1)-(2). Accordingly, the court concludes that the ALJ did not err in his evaluation of Dr. Bateman's opinions.

### III. RFC

Plaintiff argues that the ALJ erred by failing to address Plaintiff's hypertension in the assessment of Plaintiff's RFC. In support of that argument, Plaintiff relies upon his own testimony that he left a particular job because of his hypertension. Plaintiff also asserts that his hypertension is "well-documented throughout the record" and that there is "overwhelming medical evidence in the record" to support his diagnosis of hypertension.[20]

For the following reasons, the court concludes that Plaintiff's argument is without merit. First, the ALJ considered Plaintiff's testimony concerning his symptoms and limitations and determined that it was not entirely credible.[21] Plaintiff has failed to specifically challenge that determination.[22]

---

[20] Docket no. 14 at 15.

[21] *See* Tr. 20-22.

[22] Although Plaintiff makes some references to credibility in his opening brief, he does not present any argument to specifically challenge the ALJ's credibility determination. Further, the court will not consider any of Plaintiff's arguments concerning the ALJ's credibility determination made for the first time in his reply brief. *See, e.g., Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

11

Second, Plaintiff has failed to establish that medical evidence of his hypertension is either "overwhelming" or "well-documented throughout the record."[23] Plaintiff cites to only two pages of the record in support of that assertion. Furthermore, those two pages merely indicate that Plaintiff had been diagnosed with and was taking medication for hypertension; they do not indicate any functional limitations resulting from his hypertension. *See, e.g.*, *Scull v. Apfel*, No. 99-7106, 2000 U.S. App. LEXIS 18111, at *3 (10th Cir. July 26, 2000) (unpublished) (stating that "disability determinations turn on the functional consequences, not the causes, of a claimant's condition" and that the Tenth Circuit has "on a number of occasions recognized this dispositive gap between diagnostic evidence per se and the requisite showing of consequent impairment").

Finally, Plaintiff has failed to indicate any specific limitations that the ALJ should have included in the RFC assessment as a result of hypertension. In addition, Plaintiff has failed to persuade the court that the limitations included in the ALJ's RFC do not adequately account for his hypertension. To the contrary, the record demonstrates that the ALJ did consider Plaintiff's hypertension in evaluating Plaintiff's limitations. At the hearing, the ALJ specifically referenced Plaintiff's hypertension in the hypothetical given to the vocational expert.[24]

For these reasons, the court concludes that the ALJ did not err in the assessment of Plaintiff's RFC.

---

[23] Docket no. 14 at 15.

[24] *See* Tr. 251.

## CONCLUSION AND ORDER

The court concludes that all of Plaintiff's arguments fail. Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED** in all respects.

**IT IS SO ORDERED**.

DATED this 2nd day of July, 2010.

> BY THE COURT:
>
> PAUL M. WARNER
> United States Magistrate Judge